The next case on the calendar is United States v. Vaccarelli. Good morning, Your Honors. My name is John Einhorn from New Haven. I represented Mr. Vaccarelli at trial. Our theory of the case was that he was an alcoholic, and as such, he did not have the mental capacity to commit the crimes charged. In that regard, this is, as Your Honors know, this is obviously different from an insanity defense. In this case, the government has the burden of proving the mental capacity as to all phases and all charges against Mr. Vaccarelli. In so doing, and the court did charge, in fact, as to our theory of the case, we attempted to put on a very well-esteemed Yale psychiatrist, Dr. Howard Zinana, to talk about mental capacity. The government complains that we didn't go far enough in disposing of what his opinion would be, and, in fact, Rule 704B prohibits Dr. Zinana or any other witness. When you say that he was going to testify to your client's mental capacity, he was going to testify to his incapacity, that is to say his incapacity to form the requisite intent. Yes. He was going to testify generally and specifically, but he could not say under Rule 704B that, in my opinion, Mr. Vaccarelli does not have mental capacity to commit the crimes charged. But he was pressed to say what he was going to say specifically about Mr. Vaccarelli, and he really didn't. I thought if you read both reports combined, he did a first report and then a supplementary report, it was more than adequate to glean his opinion from that. The objection that the judge had, and obviously the government too, was that he based his opinion on Mr. Vaccarelli's statements to him, which the judge said were self-serving, but that's how a psychiatrist gets his information. There's no blood test, CAT scan, or MRI for that. That's how you find out what you want to know about the person. But tell me he was going to offer a diagnosis of chronic alcoholism specific to the defendant. Yes, he was. And then he was going to testify about the effects of chronic alcoholism on people generally. Yes. But what was he going to say about it? I looked at the two reports, and I understand the government's objection below and the trial court's ruling is he didn't give the reasons for the diagnosis. You say, well, the reason for the diagnosis was Mr. Vaccarelli's statements. Yes. What was he going to say about the effects of chronic alcoholism on people generally? Well, I thought that's something that we had to leave to trial in terms of exactly what he would say. I will say that we were all nervous about his verging into the jury's territory as to how far they could go. For example, one of the things he could have said, Your Honor, is that, well, he couldn't have, because of his excessive alcoholism, severe alcoholism, he couldn't have mental capacity to commit this crime. Well, right there he stepped over the line. And so I think as far as he can go in this non-insanity case is just to say this is what the illness is all about. This is what it does to somebody. And what I saw in Mr. Vaccarelli, based upon my interviews, is the following. So it was a little bit of a balancing act, but the court never let him go that far. I think that the closest the circuit really has come is the Boykoff case, which was not an alcohol case but a mental capacity case, where the Second Circuit said we haven't discussed this issue and we're not going to do it here, although it might be harmless error for, and frankly, more of a coincidence than anything else, it was the same expert. It was also Dr. Zanana, Howard Zanana, in the Boykoff case, too, who was not allowed to testify. And so it was more the lack of harmless error that the Second Circuit, Your Honors, let it go in that particular case. But in Mr. Vaccarelli's case, the judge found it would be confusing to the jury. It would not be helpful. To the contrary, it would be very helpful. It would be very useful. In fact, that was— But what would he say that would be so—I mean, summarize for me what his testimony would have been that would have been helpful for the jury. So he would have said something similar to what I believe her name was Donna Christie, the alcohol counselor, said, which is to say, I've interviewed Mr. Vaccarelli. He has severe, in my opinion, severe chronic alcoholism. He also has a disease. He suffers from a disease because of the lack of B1 in his brain. And all those things would make it so that his judgment was impaired. I can't tell you, ladies and gentlemen of the jury, that, in fact, how far that would go or if it would constitute lack of medical capacity. But clearly his judgment, because of his alcoholism, was impaired. It affected his ability to make decisions. So let me stop you there. I mean, it sounds like what you're saying is that had he been allowed to testify, his testimony would have basically mirrored that of another witness. I think it would have been similar to hers. I think the difference is that she was a counselor with no credentials to speak of. He was a very, very reputable and well-credentialed person at Yale whose testimony would have meant something, I think, to a larger degree. But was her testimony disputed? No, it was not. Her testimony, well, that's not true. The government cross-examined her, but I believe in the end her cross-testimony stood. Yes, Your Honor. So, I mean, I guess that goes to harmlessness then, right? I mean, so if her testimony was that chronic alcoholism can affect judgment. Yes. And the government didn't really take issue with whether or not it affected her judgment, your client's judgment. What they basically said was it wasn't really chronically alcoholic. Well, it's an interesting point because the district court gave a limiting instruction basically saying, you know, you've heard that Mr. Vaccarelli is a chronic alcoholic. He's got serious problems. It's for you to decide whether or not those things impair his ability to have mental capacity. And, you know, I think in reading that charge and that limiting instruction to the jury, it would have meant something different if, in fact, the evidence came from someone such as Dr. Zanata rather than an alcohol counselor. I'm not denigrating the witness, but she was not of the credentials that Dr. Zanata had. So there you are as the jury, and you're trying to decide, in fact, did he have mental capacity? Well, let's see. I've heard Dr. Zanata, whose CV is – I don't want to exaggerate. It had to be at least 10, 12 pages, written articles specifically on alcoholism and so forth. And then you've got an alcohol counselor. So I think it's beyond harmless error. I think it's a substantial distinction between the two. I mean, the case really, if you forget about the alcoholism, though, does go to mental illness, and I think it really is a case where before this court, in any event, the decision is and the issue really is whether or not the mental illness that indisputably Mr. Vaccarelli had should have been given an opportunity to be fleshed out into a little more detail. The second point I'd like to raise here is that at trial, the government called a representative of FINRA, Financial Industry Regulatory Authority, and the representative from FINRA said, Well, what Mr. Vaccarelli did violated our rules. And then the government called a representative of his employer, the Investment Center, and the Investment Center representative said, Well, what he did violated our rules. And the judge gave a limiting instruction as to those two witnesses. But notwithstanding that, I believe under 404, that was off-the-charts prejudicial. I mean, you're trying to decide on a criminal case whether or not the government has sustained its burden of proof on a crime, a crime charge, and yet you're bringing in other people to say, Well, he's already guilty in terms of violating a government entity, FINRA. Well, the point is that had he answered the FINRA forms and his company's forms correctly and honestly, it would have revealed the fraud, right? Yes, it would have if he had correctly and honestly revealed those. But I think it opened – Well, and that goes to his intent or his motive or his candor, right? Doesn't it open up an entire door, though, to any time anyone has regulated – Well, potentially, but that's the point of a limiting instruction, and there was one here, right? Yes, and I believe on that regard I've been trying to understand why we couldn't get a limiting instruction then about Dr. Zanana. If a limiting instruction cures all evils, then why wouldn't it cure the evil of Dr. Zanana confusing the jury? I don't believe it is. I think there's some – and I've always felt this way – there's some limiting instruction, some things that happen. It isn't possible that a limiting instruction can make everything hunky-dory. And in this particular case, you're sitting as a jury listening to evidence that my client violated rules of a Federal agency and of his employer, and you're thinking, well, he's got to be guilty, and even though the judge says, well, we can use it as we want to use it. So I think that was an unfairly prejudicial tactic about bringing those two witnesses. Wasn't that evidence, though, direct evidence of the fraud? I mean, correct me if I'm misunderstanding the record, but one of the misstatements was he didn't tell – disclose to his employer his relationship with the successor trustee position. And one of the reasons he might not have done that is because he was committing fraud in connection with that trustee relationship. Well, his – yeah, his fraud was essentially – which goes to the sophisticated means issue, too. His fraud was really taking money from his customers and using it for his personal benefit, tuitions and so forth. There's no excuse. But that was his fraud in a nutshell. And I don't think it was necessary then to say, well, not only did you steal these people's money and violate criminal statutes, but in doing so you also violated these other rules and regulations. And I think that pushed – that pushed it into territory that made it unnecessarily prejudicial for him. You've reserved some rebuttal time. All right. Thank you. Good morning, Your Honors. May it please the Court, my name is Jennifer Lariah and I represent the United States. Your Honors, Judge Arderton did not err when she excluded the testimony of Dr. Zananna. Judge Arderton issued an opinion that gave three independent bases for the exclusion of that testimony, and she did not err in making any of those rulings. First, Dr. Zananna's reports, reading both the initial report as supplemented by the second report, were wholly insufficient to comply with Rule 16's requirements concerning a summary. Specifically, Dr. Zananna's opinion appeared to be that Mr. Vaccarelli had substance abuse, alcoholism, and a related condition. However, he failed to identify the time period for those diagnoses or the bases for those diagnoses. The crux of his testimony, as described during the pretrial conference and in the supplemental report, was supposed to be about the effects of chronic alcoholism on people generally, and Mr. Vaccarelli specifically. However, in his reports, he failed to identify or define what those effects would be that he would testify about. As this Court found in Olbrecht, identifying such general topics for testimony is insufficient under Rule 16. Similarly— Well, doesn't it make sense to assume that the time period is the time period charged in the indictment? I mean, why would they call somebody to testify as to his alcoholism in high school? It's a good question, Your Honor, but Dr. Zananna didn't meet Mr. Vaccarelli until I believe 2019. The scheme to defraud in this case began in 2011. And the evidence at trial presented a lot of conflicting testimony concerning drinking, conflicting evidence. There was Mr. Vaccarelli's testimony, and then there was the testimony of victim investors concerning his drinking. It's not clear that Dr. Zananna's opinion would have applied all the way back to 2011, particularly when he was examining Mr. Vaccarelli in 2019. Well, wouldn't his testimony then generally, and as to Mr. Vaccarelli specifically, be useful to the jury to explain that one may have all of the disabilities and impairments of alcoholism and yet be high-functioning? Because that really is what this case is about, that you can be a high-functioning alcoholic, you can be a high-functioning addict. And this is not something that necessarily, necessarily, jurors know about.  Your Honor, I think there's the defining effects question that comes under the Rule 16 inquiry, which I don't think Dr. Zananna did. Dr. Zananna didn't explain what he was going to say the effects were, what the impairments supposedly were. And secondly, I think Your Honor is asking about the helpfulness question, Judge Arderton's second basis for excluding that testimony under Rule 702. Mr. Vaccarelli failed to show that whatever it was that Dr. Zananna was going to testify about with respect to the effects, that that was in some way tied to the mens rea element of the offenses, and here the specific intent to defraud. I don't think that connection was ever made, and that's what Judge Arderton found when she decided that Mr. Vaccarelli had not shown that, such that that testimony was proper under Rule 702. And I think that's related to why Judge Arderton excluded the testimony under Rule 403, because given that very limited probative value, there was a significant risk that Dr. Zananna's testimony, whatever it was going to be, would confuse or mislead the jury. Just turning to Attorney Einhorn's second point, the District Court Judge Arderton properly admitted evidence concerning the defendant's misstatements on the questionnaires, specifically the making of the false statements on the compliance questionnaires submitted to the Investment Center. It was charged as part of the offense, as part of the scheme to defraud in this preceding indictment. And by making those false statements, as Attorney Einhorn just said, Mr. Vaccarelli allowed the fraud to continue. He effectively took steps to conceal that fraud, because if Mr. Vaccarelli had disclosed information to the Investment Center, it is likely that they would have discovered the fraud and would have prevented any further fraudulent activity. The District Court properly admitted that evidence. The District Court also gave a cautionary instruction concerning the use of that testimony, and it's, I think, also significant to point out here that that conduct is significantly less disturbing or sensational than the conduct he was charged with. So there was very little risk of prejudice to Mr. Vaccarelli. If the Court doesn't have any further questions, I'll rest on the government's papers with respect to the other issues. Thank you, Your Honors. Thank you. We'll hear rebuttal. Just one thing, if I may, on rebuttal. When the government says there was very little risk of prejudice, I think that was an understatement and comes from maybe a government perspective where they don't see it. But the risk of prejudice here is that you've got independent or extraneous determinations of essentially guilt in other areas, which is going to spill over onto the determination of guilt in his criminal case. So in that, I think there's a very high risk of prejudice for Mr. Vaccarelli. I guess what bothers me thinking about this, too, is I'm wondering if this is going to be the norm on criminal cases. Any time that there's a violation, a contemporaneous violation of a federal regulatory body, the government would bring it in, not through a found violation after a hearing or probable cause found, but just bring in a witness who would say, well, isn't it so that Rule 10b-5 says the following? And is it true, in your opinion, that Mr. Vaccarelli has violated Rule 10b-5? So I think it really sets us off in the wrong direction with regard to risks of prejudice in at least white-collar cases. But the point is that the statements concealed the fraud and helped perpetuate the fraud, which was the subject of the indictment, right? It is, and I think that— So you're not disputing that it's relevant? No, I am not. What I'm saying is it's unduly prejudicial. That's my concern about how it was done. I think there might have been other ways to have done that, but by calling a witness from FINRA, calling a witness from his employer, having them testify about the violations, the prejudice, I think, was overwhelming. Thank you, Your Honors. Thank you both. We will take the matter under advisement. That's the last case to be argued this morning, so I'll ask the clerk to adjourn the court. Court stands adjourned. Thank you.